KELLY v. GUESS.

(Division B. March 31, 1930. Suggestion of Error Overruled, June 2, 1930.)

[127 So. 274. No. 28512.]

Gore & Gore, of Marks, for appellant.

M. E. Denton, of Marks, for appellee.

Argued orally by W. E. Gore, for appellant.

Anderson, J., delivered the opinion of the court.

The appellee brought this action against appellant in the county court of Quitman county on a promissory note for six hundred dollars, signed "C. & H. Kelly by Silas Kelly." There was a trial in the county court, resulting in a verdict and judgment for appellee, from which appellant appealed to the circuit court of Quitman county, where the judgment of the county court was affirmed. From that judgment of the circuit court appellant prosecutes this appeal.

The note was dated January 5, 1926; the body of the note is in this language: "One year after date we promise to pay to the order of Rena Guess six hundred dollars at eight per cent. per annum from date. Value received and charge the same to the account of renewed note. [Signed] C. & H. Kelly by Silas Kelly."

The declaration was in three counts; but the view we have of the case renders it unnecessary to refer to any except the first count. It was charged in that count that appellee lent to appellant the sum of six hundred dollars; that the loan was made to him personally, and not to the firm of C. & H. Kelly; that C. & H. Kelly were not known in the transaction; that appellee is an ignorant, unlettered negro woman; that appellant represented to her, when the loan was made, that he was borrowing money for himself; that he was signing the note by attaching his own name thereto, and fraudulently concealed the fact that he was signing the note for C. & H. Kelly, and appellant did not know that the note was so signed until long after its execution.

Under those allegations appellee sought to recover on the note. In other words, appellee sought by this count of the declaration to recover on the note as the contract of appellant, and not that of C. & H. Kelly.

The evidence on behalf of appellee, if true, established the allegations of the first count of the declaration. The evidence on behalf of the appellant was to the effect that the loan was made to C. & H. Kelly, not to appellant, and that, in borrowing the money from appellee, and executing the note therefor, appellant acted as the agent of C. & H. Kelly, and that appellee knew these facts at the time, and therefore no deceit or fraud was practiced upon her in the transaction.

As stated, the verdict and judgment were in favor of appellee. The jury therefore necessarily found the issue of fact in appellee's favor.

The main ground relied on by appellant for the reversal of the judgment is that, conceding for the sake of

the argument that the jury was justified, from the evidence, in finding the issue of fact in the appellee's favor, still appellee was not entitled to recover on the note without first having it reformed in a court of equity, so as to conform to the facts found by the jury. This question is analogous to the question of the character of the liability of one who, without ·authority, executes a contract in the name of an alleged principal. There has been much diversity of opinion among the courts on the question. "Three forms of remedy have been recognized by the courts as available to the other party to the contract, each being based upon a distinction in the nature of the liability; (1) an action against the agent upon the contract, as principal in the contract; (2) an action against the agent for damages for breach of his warranty of authority to execute the contract; and (3) an action for deceit where the agent has acted in bad faith in his assumption of authority."

In some jurisdictions the first named of these remedies has been adopted. Among the courts so holding is our own court, in Brown v. Johnson, 12 Smedes & M. 398, 51 Am. Dec. 118. They hold that one who enters into a contract in the name of an alleged principal, without authority, is liable upon the. contract as principal; the reason for the rule being that it must be the intention of the party to bind some one, and, as the principal was not bound, the agent should be. The authorities so holding will be found collected in Kennedy v. Stonehouse, 13 N. D. 232, 100 N. W. 258, as reported in 3 Ann. Cas. at page 217 (note, pages 219, 220). Among those referred to in the note is our own case of Brown v. Johnson, supra. There will be found a discussion of this question in 21 R. C. L., section 96, pp. 917, 918. To the same effect is Estes v. Jones, 119 Miss. 142, 80 So. 526. The same principles apply to a large extent where the agent is acting for an undisclosed principal. "A person acting as agent for another is personally answerable if at the time of making the contract in his principal's behalf he failed to disclose

the fact of his agency. He is subject to all the liabilities, express or implied, created by the contract, in the same manner as if he were the principal in interest. If he would avoid liability, the duty is on him to disclose his principal, and not on the party with whom he deals to discover him. The other party to the contract may proceed against the agent or against the principal." In other words, in such a case the agent will not be permitted to claim that the contract is not his, but that of his principal. 21 R. C. L., section 69, p. 895.

As stated, the evidence on behalf of appellee, which the jury by its verdict found to be true, established the fact that if, in the execution of the note, appellant acted as agent for C. & H. Kelly, that fact was undisclosed to appellee. In such a case, under the law, appellee had a right of action on the note, either against the agent, or his principal, or both. And this right of action existed on the contract as written in connection with the fact alone that appellant acted as an undisclosed principal. It was not incumbent upon appellee, therefore, to first go into equity and have the note reformed, so as to make it the note of appellant.

At the time of the execution of the note, one of the partners of the firm of C. & H. Kelly had died. In two instructions for appellee the court charged the jury that the death of a member of a copartnership dissolved the partnership, and that thereafter no person had any right to execute a note in the name of the partnership; and, if the evidence showed that appellant signed the name of C. & H. Kelly, the partnership, to the note involved, the note was unenforceable against the partnership or 'any member thereof, but became the contract of appellant.

Appellant testified, first, that he was a guardian of C. & H. Kelly after the death of one of the partners; and then later he testified that he was administrator of the partnership estate. There is no such thing known in law, of course, as the guardianship of a partnership estate nor as administrator of such an estate, unless the surviving partner shall fail or refuse to administer and

wind up the partnership estate. Sections 2085 to 2090, inclusive, Code of 1906, sections 1828 to 1833, inclusive, Hemingway's Code 1927. There is nothing in the record in this case showing or tending to show that, when the note involved was executed, appellant was administering and closing up the partnership estate of C. & H. Kelly, in the capacity of administrator of the deceased partner. Therefore, under the facts of this case, the instructions, if erroneous, were harmless to appellant. Their effect was to charge the jury that, if they believed from the evidence that appellant had no authority to execute the note on behalf of C. & H. Kelly, then he was personally liable thereon. Appellant failed to show that he had any such authority after the death of one of the partners. It devolved on appellant to show such authority if he had it.

We are unable to see any substantial error committed by the trial court, either in its rulings on the evidence, or in the giving of instructions.

Affirmed.